# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                      CASE NO. 4:06-CR-086-SPM

MICHAEL ROBINSON,

    Defendant.

_____/

## BENCH TRIAL VERDICT

**THIS CAUSE** comes before the Court upon a criminal bench trial that was held in Tallahassee on August 13 and August 14, 2007. The issue before the Court is whether under Count One of the indictment, Defendant Michael Robinson knowingly, willfully, and for the purpose of commercial advantage or private financial gain, did infringe the copyrights of certain phonorecords by reproducing or distributing more than ten (10) copies of phonorecords having a total retail value in excess of $2,500, without the authorization of the copyright holders, in a 180-day period. Additionally, under Count Two of the indictment, the Court must determine whether Defendant Michael Robinson knowingly trafficked in counterfeit or illicit labels affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany, a phonorecord. Upon due consideration of the evidence adduced at trail, the Court finds Defendant Michael Robinson guilty on both counts.

### FACTUAL BACKGROUND AND TRIAL TESTIMONY

On October 19 and October 26, 2006, two undercover officers purchased a total

of eleven compact discs ("CD") and one digital video disc ("DVD") from Flava Music, a business located in Tallahassee, Florida and owned by Defendant Michael Robinson. All of the items purchased were suspected to be counterfeit or pirated. On October 26, 2006, officers from the Tallahassee Police Department executed a search warrant on Flava Music. The officers had probable cause to believe that this business sold counterfeit and pirated compact discs in violation of 18 U.S.C. § 2319 and 17 U.S.C § 506(a)(1). Additionally, they had probable cause to believe that Robinson was trafficking in counterfeit or illicit labels in violation of 18 U.S.C. § 2318.

While executing the search, the officers seized three desktop computers, a laptop computer, a CD-burner, a printer, 7,343 CDs, 46 DVDs, 174 empty jewel cases used to hold CDs, and hundreds of labels used as inserts in the jewel cases. The computers were turned over to the Federal Bureau of Investigation for examination by their computer forensic experts. A sample of the CDs were examined by representatives of the Recording Industry Association of America ("RIAA"), a trade group that represents the recording industry protect the intellectual property rights of artists, producers and others. Their Examination led to the indictment of Flava Music owner Michael Robinson. Robinson waived his right to a jury trial and proceeded with a bench trial. What follows is a summary of the testimony offered at trial.

On October 19, 2006, Tallahassee Police Officer Dewey Riou testified that he purchased five CDs from Defendant Robinson for $35. Of the five CDs that Riou purchased, four of them were imprinted with the words "for promotional use only". One CD did not have the promotional language written on it, but Defendant Robinson explained during his testimony that he had given that CD to the officer as a promotional

2

item.[1]

Officer Riou testified that many of the CDs located inside the store were packaged in thin jeweled cases and the artist and album name was handwritten on the actual CD, as opposed to printed on a label or insert, as he would normally see in a store. While Officer Riou was in the store, he heard Robinson say that he needed to go make or "burn" a copy of a CD to give to Riou. Riou also testified that there were other people inside the store, but that Robinson was the only person that helped him choose and complete his purchase. Riou testified that he did not receive a receipt from Robinson at the end of the transaction. Additionally, Robinson made no comment regarding the promotional nature of the CDs that he had given to Officer Riou. Riou testified that he understood that the money he gave Robinson was to purchase all of the CDs he received, and that some of them were given to him for free on a promotional basis.

On October 26, 2006, Officer Shawn Butler also made an undercover purchase from Flava Music. He testified that he purchased seven CDs and a DVD from Robinson for a total of $37. During the transaction, Robinson told Butler that he would have to go "burn" a CD to give to him. Robinson did go make a copy of a CD and he included it in the items that he gave to Butler. Robinson did notify Butler that one of the CDs he was receiving was a promotional CD. Robinson did not give Butler a receipt for his purchase.

---

[1] Robinson defined a promotional item as an item that cannot be sold for a profit, but must be given freely. Robinson testified that the purpose of giving promotional CDs is to create excitement for certain artists or deejays or production companies by letting the public hear the music free of charge.

Tallahassee Police Officer William Stewart Clendinen, Jr. is an investigator with the Tallahassee financial crimes unit. He testified that he investigated this offense and also facilitated the search and seizure of items found at Flava Music on October 26, 2006. He authenticated photos that represented the state of the store before the search was conducted by the officers. Officer Clendinen testified that the officers seized, among other things, the following:

1. Three desktop computers;
2. One laptop computer;
3. 7,343 music CDs;
4. 46 DVDs;
5. 174 jewel cases which are used to hold CDs;
6. spindles that held CDs that looked like they had been copied;
7. hundreds of blank CDs;
8. a skimmer machine used for processing credit card purchases;
9. a printer that held inserts used to identify artist and album names, and then placed inside of jeweled cases that hold CDs;
10. hundreds of labels used to identify the CD inside the jewel case;
11. a Certificate of Registration for the state of Florida addressed to Flava Music, care of Michael Robinson;
12. a City of Tallahassee Business Tax Certificate addressed to Flava Music, care of Michael Robinson; and
13. a Business Registration Certificate for the state of Florida addressed to Flava Music, care of Michael Robinson.

Officer Clendinen also testified that common identifying characteristics of counterfeit CDs are a) the handwritten name of the artist; b) the handwritten name of the album; and c) the CD type is recordable, often called a CD-R or CD-RW.

Joseph Cornwall, an investigator for the Federal Bureau of Investigation, testified that labels were seized from Flava Music were printed labels that were different from typical CD manufacturer's label. Additionally, one of these labels were inserted into the jewel case that held a CD. On that CD was the handwritten artist name and album name. On several exhibits, the label that was inserted into the jewel case had the same information that the printed manufactured CD contained. Agent Cornwall also testified that a label-making software program called Sure Thing had been seized from Flava Music. Lastly, Agent Cornwall testified that Robinson had paid business licensing fees, had filed corporate income tax records and had filed unemployment tax information sporadically throughout the last seven years.

Scott Downie, a computer forensic examiner for the Federal Bureau of Investigations testified about the information contained on the four computers that were seized from Flava Music. He testified that someone used the label-making software program that had been downloaded onto the computer. Additionally, Downie testified that the computers had been used to compress music files and then generate CDs of those files. Downie also testified that the computer history showed the legitimate recordings of songs and the location on the computer of the CD copies of those recordings. Dowie's examination of the computers also revealed programs and internet sites that are used for music downloading and copying. The computer history also indicated that user names and passwords associated with these programs and websites

were names or IDs than belonged to Defendant Robinson. Downie also testified to copies of labels that were on the computers. These labels are usually affixed onto the actual CD, but in this case, they were not made into stickers to be placed on the CD. They were made into squares that could be cut out and placed inside the plastic jewel case that held the CD. Lastly, Downie testified that he created 160 CDs of the music files that were on the computers and those CDs were sent to Wanda Rosado of the RIAA in order for her to determine the copyright status of these downloaded and copied songs.

James Duff, a contract investigator for the RIAA testified about the characteristics of legitimate and counterfeit CDs. Duff was trained in this area by the RIAA. Duff testified that a genuine CD will be in a tight shrink-wrapped plastic case and safety codes will be printed on the inside of the shrinkwrap. Additionally, legitimate CDs are never on recordable CD format, and they always have a SID number printed on the actual disk. Lastly, legitimate CDs have inserts that are printed on heavy, glossy, paper, that show album name, artist information and a warning that it is illegal to copy or reproduce the item for sale.

Duff also testified that the selling of a promotional CD is a violation of copyright infringement. CDs marked "for promotional use only" must be freely given away and not sold. Additionally, the selling of deejay mixes of copyrighted songs, or compilation CDs, without the permission of the artists is also an example of copyright infringement. After examining the eleven CDs and one DVD that were purchased from Flava Music by the undercover officers, Duff testified that ten of them were counterfeit and that the one CD that was not counterfeit was a promotional CD that was not for sale. Lastly, Duff

testified that the market value of a legitimate CD on October 26, 2006 was $14.92 (as determined by the RIAA).

Wanda Rosado, an investigator with the RIAA testified that from the items that were seized from Flava Records, 261songs had copyright registration numbers associated with them.  And of the song files that were found on computers seized at Flava Music, 67 of them had copyright registration numbers associated with them.   In other words, Rosado found 328 files that were seized from Flava Music and were also protected by copyright.

The last person to testify at the trial was Defendant Michael Robinson.  Robinson testified that he works as a deejay and that the 7,343 music CDs and the 46 DVDs seized from Flava Music were part of Robinson's own personal collection of CDs, used for his deejay business.  He also testified that he sold legitimate CDs from his store and that he does not sell CDs that are "for promotional use only".  Robinson also testified that he knew that it was illegal to reproduce unauthorized, copyrighted albums for sale and that he had never signed any licensing agreements or otherwise obtained permission from the music artists or recording companies to sell their work.

Additionally, Robinson testified that out of the seven CDs purchased by Officer Butler for $37, five of them were free promotional CDs, one was a DVD of a "little homemade movie" and the last item was a legitimate CD.  And of the five CDs purchased by Officer Riou for $35, Defendant Robinson testifies that four of them were promotional CDs that were given to Officer Riou for free.  Robinson did admit that the writing on the CDs that were purchased by the undercover officers was his handwriting.  Robinson also testified that many people work on the computers at his store.  As a

result, he is not always aware of the websites that are visited from his computers or the files downloaded onto his computers.

## ANALYSIS

Count One

In accordance with 18 USCS § 2319 and 17 USCS § 506 and as explained in jury instructions submitted by the government and approved by defense counsel, Defendant Robinson can be found guilty of this offense only if all of the following facts are proved beyond a reasonable doubt:

1. That a copyright exists for the phonorecords charged;

2. That the defendant infringed the copyright in this work or item by reproduction or distribution of the copyrighted work;

3. That the defendant, in infringing the copyright, acted willfully;

4. That the defendant reproduced or distributed during a 180-day period at least ten (10) copies or phonorecords, of one or more copyrighted works, which have a total retail value of more than $2,500; and

5. The defendant infringed the copyright for the purposes of commercial advantage or private financial gain.

At the trial, Rosado confirmed that 328 files found in Flava Music and available for sale to the public were protected by copyright. Specifically, there was a serial number assigned to those songs and that serial number was assigned by the United States Copyright Office. Both Officer Butler and Officer Riou saw Robinson reproducing some of the work that was protected by copyright. Additionally, Robinson's handwriting was on several of the CDs that were available for purchase. This evidence persuades the Court that Robinson possessed and distributed copyrighted material. His handwriting combined with his knowledge of the illegality of copyright infringement

demonstrated the willfulness of his activity. Furthermore, the fact that he filed business taxes, had business certificates and named the store Flava Music demonstrates his intention to create a legitimate business from which he could profit from the sale of music.

Agent Downie testified that the computer revealed the process by which music was obtained from a legitimate source and then copied onto CDs. The computer history of the activity on the websites used to legitimately download this music show that the music was downloaded by accounts owned by Robinson. Robinson's testimony that other people who work in or visit the store are the people who are using the computers to download and reproduce copyrighted songs is unpersuasive. Robinson had knowledge of the illegality of reproducing copyrighted music for sale. The fact that he was the proprietor of a music store from which counterfeit CDs were seized; and he was the owner of the computers that were used to download and reproduce the CDs; and that this process actually took place inside the music store, all demonstrate the intention and purposefulness this activity.

Rosado confirmed that Robinson was in possession of at least 160 CDs that contained 261 copyrighted music files. In accordance with testimony that the value of these CDs was $14.92 each, the total amount for those counterfeit CDs is $3894.12. Additionally, the fact that these items were seized from Flava Music, where counterfeit CDs were being sold to undercover officers, it is reasonable to believe that Robinson was in possession of these copyrighted CDs for the purpose of distribution. Robinson's defense that these CDs were reproduced for "personal use" is questionable in light of the multiple copies of copyrighted songs that were found on his computer. And even if

9

the copies were not for distribution, the evidence shows that they were likely reproduced by Robinson. The statute requires that the Government prove distribution *or* reproduction. Therefore, given the volume of CDs (both counterfeit and legitimate) found in the store, the number of computers and CD burners in the store, the admission that at one point up to seventy percent of the store's profit came from music sales, and the testimony of the undercover officers who purchased counterfeit CDs from the store, it is more likely that Robinson was reproducing copyrighted CDs for sale in his store.

Count Two

In accordance with 18 USCS § 2318, and as explained in jury instructions submitted by the government and approved by the defense counsel, Defendant Robinson can be found guilty of this offense only if all of the following facts are proved beyond a reasonable doubt:

1. The defendant trafficked in labels affixed to, enclosing, or accompanying, or designed to be affixed to, enclose, or accompany a phonorecord or a copy of a motion picture or other audiovisual work;

2. The phonorecord of a sound recording or a copy of motion picture or other audiovisual work was protected by copyright;

3. The labels were counterfeit or illicit; and

4. The defendant acted knowingly.

Special Agent Joseph Cornwell testified that many labels obtained from Flava Music were counterfeit or illicit labels. Furthermore, Cornwell gave the Court guidance on how to determine whether a label is legitimate or counterfeit. This guidance included evaluating the weight of the paper, the quality of the paper, the presence of information on both sides of the paper, the quality of the printing, and the shape of the paper itself.

By using this criteria to examine the evidence offered by the government, the Court was able to determine that many of the labels found at Flava Music were indeed counterfeit. Specifically, many of the labels that were seized from Flava Music were enclosed in the jewel cases of CDs that Rosado had identified as being copyrighted. Also, there were copies of printed, counterfeit labels laying on the printer in Robinson's store, at the time of Robinson's arrest as well as hundreds of labels found in other parts of the store.

## CONCLUSION

After reviewing all of the evidence presented at the bench trial, listening to the testimony of all the witnesses and considering the arguments of the parties, the Court finds beyond a reasonable doubt that Michael Robinson is guilty of the offense of copyright infringement of phonorecords, as charged in Count One of the indictment. Additionally, this Court finds that Michael Robinson is guilty of the offense of trafficking in counterfeit or illicit labels, as charged in Count Two.

**DONE AND ORDERED** this <u>twenty-fourth</u> day of August, 2007.

          <u>*s/ Stephan P. Mickle*</u>
          Stephan P. Mickle
          United States District Judge